J-A05037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA,, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| VICTOR MCKEEVER, | |
| Appellant | No. 754 WDA 2016 |

Appeal from the Order Entered May 23, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-MD-0000711-2016

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and OLSON, J.

MEMORANDUM BY BENDER, P.J.E.:                      **FILED MAY 26, 2017**

Appellant, Victor McKeever, appeals from the trial court's order denying his petition for writ of *habeas corpus*, through which Appellant sought to halt his extradition to New York where he faces drug and conspiracy charges. After this Court denied Appellant's petition to stay extradition pending the outcome of this appeal, Appellant was, in fact, extradited to New York. As such, the Commonwealth argues that Appellant's appeal from the merits of the trial court's order has been rendered moot, while Appellant asserts the applicability of exceptions to the mootness doctrine. After careful review, we dismiss the instant appeal as moot.

The following history of the case was provided by the trial court:

> On December 30, 2015 the Supreme Court of the State of New York issued an arrest Warrant for [Appellant]. [Appellant] was arrested by [the] Allegheny County Sheriff's Office on January 7, 2016, pursuant to a fugitive arrest warrant issued by

the Police Department of Nassau County, New York. On April 6, 2016 the Commonwealth notified [Appellant] of its receipt of requisition papers from the State of New York which included a Governor's extradition warrant from the State of New York, a Governor's extradition warrant from the Commonwealth of Pennsylvania, an application for requisition from the District Attorney of Nassau County, and an indictment.

On April 11, 2016, [Appellant] moved for a reasonable period of time to file a Petition for Writ of Habeas Corpus ("Habeas Petition") to challenge his extradition to New York. [Appellant] was given thirty (30) days to furnish this [c]ourt with his Habeas Petition. [Appellant] filed his Habeas Petition on May 10, 2016, and an evidentiary hearing was scheduled for May 23, 2016. [Appellant] was charged (as per the New York Governor's Warrant) with Conspiracy in the Second Degree (two counts), Conspiracy in the Fourth Degree, Operating as a Major Trafficker, Criminal Possession of a Controlled Substance in the First Degree, Criminal Possession of a Controlled Substance in the Second Degree, and Criminal Possession of a Controlled Substance in the Third Degree. At the hearing, [Appellant]'s counsel focused solely on the allegation that [Appellant] is alleged to have committed one of his crimes on November 22, 2015. This [c]ourt took notice that [Appellant] is also charged with a conspiracy spanning several months. [Appellant] further argues that since he allegedly was not in New York, he therefore cannot be a fugitive. This [c]ourt knows well that conspiracy law does not require presence. [Appellant] also raised the issue that he was incorrectly identified as the subject of the warrant and wished to contest his identity as the person requested in the warrant. The Commonwealth produced evidence of verification from New York, the FBI, and fingerprint evidence. Counsel continued to focus on the fact that [Appellant] was alleged to have committed an overt act on a date he was not in New York - to the complete exclusion of the conspiracy charge. [Appellant] then took the stand of his own volition, where he stated that he had "never been in New York." On cross-examination[,] [Appellant] was asked if he knew several of the other members of the alleged conspiracy. [Appellant] acknowledged that he did know some of the individuals named in the indictment and warrant. At this juncture the [c]ourt ended examination to avoid any impingement upon [Appellant]'s Fifth Amendment Rights. The [c]ourt then [denied] [Appellant]'s Habeas Petition and signed an [o]rder [granting] [e]xtradition.

- 2 -

Trial Court Opinion (TCO), 7/8/16, at 2-4 (emphasis and internal citations omitted).

Appellant promptly filed a timely notice of appeal on May 25, 2016. The same day, in the trial court, he also filed an application to stay his extradition pending the outcome of this appeal. The trial court immediately denied the motion without comment. *See* order, 5/25/16, at 1. Appellant then filed in this Court, again on the same day, an application to stay his extradition pending the outcome of this appeal (hereinafter, "Stay Application"). On May 26, 2016 this Court issued a temporary stay of the extradition order pending our review of the Stay Application. The Commonwealth filed an answer to Appellant's Stay Application on May 27, 2016. Appellant filed a letter response to the Commonwealth's answer on May 31, 2016. This Court then issued the following order:

> Upon consideration of Appellant['s] May 25, 2016 "Emergency Miscellaneous Petition for Stay or Injunction Pending Appeal" and supplement, filed by Mikhail N. Pappas, Esquire, and upon review of the Commonwealth's May 27, 2016 "Response to Emergency Miscellaneous Petition for Stay or Injunction Pending Appeal" the following is hereby **ORDERED**: this Court's temporary stay entered on May 26, 2016 is **LIFTED** and Appellant's petition for stay is **DENIED**.

Order, 6/1/16, at 1.

Also on June 1, 2016, Appellant filed an "Amended Request for Relief."[1] On June 6, 2016, this Court entered an order stating:

> Upon consideration of Appellant['s] June 1, 2016 "Appellant's Amended Request for Relief and Brief in Support," the request for summary relief is **DENIED**, without prejudice for Appellant to re-raise the matter before a panel assigned to this appeal.

Order, 6/6/16, at 1.

The trial court issued its Pa.R.A.P. 1925(a) opinion on July 8, 2016. In that opinion, the trial court noted that Appellant had already been extradited to New York as of the date of its filing. TCO at 2. On October 20, 2016, Appellant filed an application to remand this matter to the trial court, premised on the ostensible discovery of "after-discovered evidence … that the District [Attorney] of Nassau County proffered false testimony or failed to disclose exculpatory information for the purpose of obtaining Appellant's extradition." Appellant's Application for Remand, 10/20/16, at 4 ¶ 10. On November 2, 2016, this Court issued an order denying that request. Order, 11/2/16, at 1.

Appellant now presents the following questions for our review:

---

[1] In this filing, Appellant additionally requested summary relief pursuant to Pa.R.A.P. 123, in addition to presenting arguments in favor of a stay. **See** Appellant's Amended Request for Relief and Brief in Support, 6/1/16 (asking this Court to vacate the extradition order and to grant Appellant's Habeas Petition filed before the trial court). It appears that when Appellant filed this document, he was unaware of this Court's June 1, 2016 order denying the stay.

I.    Did the Trial Court err or abuse its discretion when it denied Appellant's Petition for Writ of Habeas Corpus and entered an Order of Court to Extradite Fugitive, where the Trial Court found beyond a reasonable doubt and the Commonwealth stipulated to the fact that Appellant was not in the demanding [s]tate on November 22, 2015?

II.   Did the Trial Court err or abuse its discretion when it found that Appellant was a non-fugitive subject to extradition, and it based this finding on its consideration of jurisdictional facts that were not expressly alleged in the requisition papers and/or on its consideration of probable cause as to the charges in the demanding state?

III.  Did the District Attorney of Nassau County proffer false testimony or fail to disclose material exculpatory evidence, thereby resulting in the denial of Appellant's constitutional right to due process under the Fourteenth Amendment to the United States Constitution?

Appellant's Brief at 6.

Before we address the merits of Appellant's claims, we must attend to

a threshold question, raised by the Commonwealth in its Brief, of whether

Appellant's claims have been rendered moot by his extradition to New York.

> The claim of mootness … stands on the predicate that a subsequent change in circumstances has eliminated the controversy so that the court lacks the ability to issue a meaningful order, that is, an order that can have any practical effect.  Such an argument, like all claims disputing the existence of a case or controversy, is intertwined with the precept that Pennsylvania courts do not issue purely advisory opinions. *See*, *e.g.*, *Pittsburgh Palisades Park, LLC v. Commonwealth*, 585 Pa. 196, 203, 888 A.2d 655, 659 (2005). In *In re Gross*, 476 Pa. 203, 382 A.2d 116 (1978), for example, this Court dismissed as moot a case in which a patient had objected to having a mental health facility administer medication against his will.  The case was dismissed because by the time it reached this Court the plaintiff was no longer a patient at the facility, and hence, "there was nothing for the lower court to enjoin, nor can this Court now order the injunctive relief sought below." *Id.* at 211, 382 A.2d at 120–21; *see also Allen v. Birmingham*

- 5 -

***Twp.***, 430 Pa. 595, 244 A.2d 661 (1968) (finding moot an appeal of a common pleas court's refusal to enjoin an excavation where the excavation had been completed); ***Strassburger v. Phila. Record Co.***, 335 Pa. 485, 487, 6 A.2d 922, 923 (1939) (dismissing as moot an appeal from the denial of an injunction of a shareholder's meeting where the meeting had already occurred).

***Burke ex rel. Burke v. Indep. Blue Cross***, 103 A.3d 1267, 1271 (Pa. 2014).

It appears quite evident to this Court that this matter has been rendered moot. In the court below, Appellant sought solely to prevent his extradition to New York. Appellant has now been extradited to New York. Accordingly, there no longer appears to be a case or controversy about which this Court could issue a meaningful opinion. Appellant has not argued, nor can we conceive of, how this Court could issue any order by which Appellant would be returned to Pennsylvania. This Court has no jurisdiction in New York or over New York authorities. As such, any opinion on the merits of Appellant's claims would be merely advisory in nature, as it would not serve to dictate the outcome of this case in any meaningful way. This case is not merely 'arguably' moot, it is quintessentially moot. Nevertheless, Appellant, in his reply brief, asserts exceptions to Commonwealth's claim of mootness.[2] We will address each of these issues in turn.

---

[2] Initially, we recognize that Appellant asserts that the Commonwealth "waived" its mootness claim, because it did not raise it before the trial court. *(Footnote Continued Next Page)*

## Exceptions to the Mootness Doctrine

Appellant offers several arguments that the mootness doctrine is either inapplicable here, or that an exception applies. First, Appellant contends that his claims are not mooted because he filed an application for a stay of extradition, which, he argues, is factually distinct from a case upon which the Commonwealth "heavily relies" in asserting mootness in this matter, **Commonwealth v. Caffrey**, 508 A.2d 322 (Pa. Super. 1986). Appellant's Reply Brief at 4.

In **Caffrey**, the appellant filed a petition for writ of *habeas corpus* seeking to prevent his extradition to Delaware. The petition was denied in the trial court, and Caffrey appealed from the decision. However, Caffrey was extradited prior to the issuance of this Court's decision. Consequently, the **Caffrey** Court quashed the appeal as moot. In a footnote, the Court commented:

> This does not leave all those denied the writ no appellate review. A stay of the extradition could be sought pending appeal. **See**, for example, **Commonwealth ex rel. Raucci v. Price**, 409 Pa. 90, 185 A.2d 523 (1962). Had appellant utilized that procedure,

*(Footnote Continued)* ———————————

Appellant's Reply Brief at 11. We find such argument to be bordering on frivolity, both legally and factually. Appellant was not extradited until after he filed his appeal and, indeed, after this Court denied his Stay Application. Clearly, mootness arose while this Court held jurisdiction, and after the trial court was deprived of it. Nevertheless, *a priori*, mootness is not an issue which can be waived. It is nonsensical to think that a finding of waiver with regard to mootness could magically imbue this Court with the power to act where there no longer exists a case or controversy upon which to act. Accordingly, we reject Appellant's waiver claim.

> he would, most likely, still be in this state and we would have the ability to rule on the merits of his appeal. However, he did not and we do not.

*Id.* at 324 n.3.

With virtually no discussion, Appellant summarily concludes that the ***Caffrey*** Court's footnote stands for the proposition that the mere filing of an application to stay necessarily precludes a finding of mootness. We read no such certainty in the above passage. The footnote demonstrate that the ***Caffrey*** Court was stating no more than that failure to seek a stay was fatal to Caffrey's appeal. It says nothing about whether such a stay would be automatically granted, much less whether, if denied, the mere filing of the stay immunizes the appellant from a mootness determination. We read this comment by the ***Caffrey*** Court as saying only that an appellant must take adequate steps to permit an appellate court to rule on the merits of his or her claims. It does not say that taking such steps will *always* ensure a ruling on the merits. Moreover, as will be discussed below, Appellant neither provided adequate support for his stay request, nor did he exhaust all his remedies to avoid extradition pending his appeal. Accordingly, we reject Appellant's reliance on ***Caffrey***.[3]

_____

[3] We arrive at the same conclusion with regard to Appellant's citation of ***Commonwealth v. Shaffer***, 612 A.2d 1354 (Pa. 1992) (*per curiam* order) (citing ***Caffrey***, without any relevant discussion, for the proposition that, "Because [the a]ppellant failed to request a Stay of Extradition … he was extradited…. Accordingly, we must grant the Commonwealth's Motion to Dismiss"). In extradition matters, absent some delay in the extradition proceedings, the failure to seek a stay of extradition will be fatal to an

*(Footnote Continued Next Page)*

Next, Appellant directs our attention to our June 6, 2016 order, wherein we denied his request for summary relief, "without prejudice for Appellant to re-raise the matter before a panel assigned to this appeal." Order, 6/6/16, at 1. Appellant argues that "to declare that this matter is now moot would be prejudicial and inconsistent therewith." Appellant's Reply Brief at 4. We disagree.

Appellant's Stay Application was not denied by our June 6, 2016 order. Appellant's Stay application was denied by the order we issued on June 1, 2016. Therefore, our June 6, 2016 order addressed only Appellant's claim for summary relief on the merits. These separate orders addressed completely different claims for relief. Appellant appears to conflate the two by suggesting that mootness, which was more directly the result of this Court's failure to grant the stay,[4] is fundamentally inconsistent with our failure to grant summary relief. Appellant's Stay Application, by contrast, was not dismissed *without prejudice*. Accordingly, we ascertain no merit to Appellant's claim that our rejection of his request for summary relief, *without prejudice*, is inconsistent with a finding of mootness.

*(Footnote Continued)* ───────────────

appeal on the merits on mootness grounds. That does not mean, however, that every stay of extradition will necessarily be granted.

[4] As discussed below, our denial of Appellant's stay request was, in turn, a direct result of Appellant's failure to properly and adequately argue that he was entitled to such relief.

We also see no merit in Appellant's undeveloped claim that the Commonwealth's opposition to the stay in its answer to Appellant's Stay Application (premised, in part, on the merits of extradition) is fundamentally inconsistent with its current mootness claim. It is not at all surprising that the Commonwealth's strategy changed as the underlying circumstances attendant to this appeal changed. Indeed, mootness would seem to apply equally to either party's claims regarding the merits of the trial court's extradition order.

Next, Appellant argues that that this matter presents an exception to mootness under the reasoning set forth in *Sibron v. New York*, 392 U.S. 40 (1968).[5] Sibron was convicted of a drug offense. In his appeal, he challenged an order denying his claim that certain evidence had been admitted in violation of the constitution. After exhausting his appeal in New York's appellate courts, Sibron appealed to the United States Supreme Court. However, it was asserted that Sibron's constitutional claims had been rendered moot by the expiration of his sentence. The *Sibron* Court ruled that "mere release of the prisoner does not mechanically foreclose consideration of the merits by this Court." *Sibron*, 392 U.S at 51. Instead, the Court recognized two exceptions to the mootness doctrine, as summarized by the Commonwealth Court of Pennsylvania in *Mistich v.*

_____

[5] A companion case to *Terry v. Ohio*, 392 U.S. 1 (1968).

*Commonwealth, Pa. Bd. of Probation and Parole*, 863 A.2d 116 (Pa.

Cmwlth. 2004):

> *Sibron* recognized two possible exceptions to the doctrine of mootness as a result of completion of a criminal sentence allowing review on the merits: (1) where the case could not be brought before the expiration of the sentence and the controversy was a continuing one; and (2) where under either state or federal law further penalties or disabilities can be imposed as a result of the judgment which has been satisfied. *Sibron* discussed *Pollard v. United States*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), in which the Supreme Court abandoned all inquiry into the actual existence of specific collateral consequences and in effect presumed that they existed. "[T]he possibility of consequences collateral to the imposition of sentence is sufficiently substantial to justify our dealing with the merits." *Id.* at 358, 77 S.Ct. 481.

*Mistich*, 863 A.2d at 120 n.5.

Appellant contends that the first *Sibron* exception applies. The entirety of his argument in this regard is as follows:

> The first exception applies where, "a petitioner could not have brought his case to [this Court] for review before the expiration of his [confinement]," *Sibron*[,] 392 U.S. at 51…. This exception flows from the principle that "a State may not effectively deny a convict access to its appellate courts until he has been released and then argue that his case has been mooted by his failure to do what it alone prevented him from doing." *Id.*[]
>
> The first exception clearly applies here. [The] Commonwealth filed an Answer in opposition to the Appellant's Application for Stay, and in response[,] [] Appellant's request, for relief was denied, "without prejudice for Appellant to re-raise the matter before a panel assigned to this appeal." But for the Commonwealth's Answer in opposition, the Appellant would not have been extradited. Thus, under this first exception this Honorable Court clearly should not deem this matter moot.

Appellant's Reply Brief at 6-7 (emphasis omitted).

- 11 -

Appellant's argument is unconvincing. First, Appellant does not even analyze the entire *Sibron* exception at issue. He omits consideration, and fatally so, of the second requirement, that the "the controversy was a continuing one." *Mistich*, 863 A.2d at 120 n.5. Here, the controversy is not the underlying criminal charges, or his pre-trial incarceration for such charges. Rather, the "controversy" at issue is whether the trial court erred when it ordered Appellant's extradition to New York. While Appellant may in fact remain incarcerated in New York, his incarceration in Pennsylvania, by means of an extradition detainer, is not "continuing." *Id.*

Second, Appellant simply restates a proposition we reject on its face. Appellant's Stay Application was not denied without prejudice; his request for summary relief was denied without prejudice. Even if that were not the case, it is not clear how this matter relates to the first *Sibron* exception. If there is such a relationship, Appellant makes no effort to draw one, other than to state that it is so.

Appellant's focus on the Commonwealth's Answer to his Stay Application in relation to the first *Sibron* exception is mystifying. Appellant offers no legal authority, and no logical argument, in support of the notion that the Commonwealth is not permitted to argue against an application to stay extradition pending an appeal. We ascertain nothing improper in the Commonwealth's behavior in this regard. It was Appellant's burden to demonstrate the necessity of granting a stay. It was not the Commonwealth's burden to demonstrate otherwise.

Moreover, Appellant's Stay Application, while properly invoking Pa.R.A.P. 1732 (governing "Application[s] for Stay or Injunction Pending Appeal"), failed to follow the dictates of that rule in a meaningful fashion. Rule 1732(b) directs that the "application shall also show the reasons for the relief requested…." The Stay Application, however, provided virtually no justification for the granting of the stay beyond a boilerplate argument that Appellant would be prejudiced if the stay were not granted, because "the demanding state could arrive at any moment to extradite Appellant." Stay Application, at ¶ 7.

> To obtain a stay pursuant to Rule 1732, an applicant must
>
> > make a substantial case on the merits and show that without the stay, irreparable injury will be suffered. Additionally, before granting a request for a stay, the court must be satisfied the issuance of the stay will not substantially harm other interested parties in the proceedings and will not adversely affect the public interest.

*Commonwealth v. Melvin*, 79 A.3d 1195, 1200 (Pa. Super. 2013) (quoting *Maritrans G.P., Inc. v. Pepper, Hamilton & Scheetz*, 573 A.2d 1001, 1003 (Pa. 1990)).

Appellant's boilerplate argument in his Stay Application did not "make a *substantial* case on the merits…." *Id.* (emphasis added). Appellant merely noted that he was subject to immediate extradition, with no discussion of the legal issues relevant to that determination. While Appellant argued that he would be "greatly prejudiced" if not granted a stay, Stay Application at ¶ 7, he made no assertion that such prejudice would be

- 13 -

"irreparable," **Melvin**, 79 A.3d at 1200. Nor did Appellant discuss the potential effect on other parties, or how the granting of the Stay Application would not "adversely affect the public interest." **Id.** Simply put, Appellant's Stay Application made no effort to discuss or analyze the applicable law governing this Court's determination of whether granting a stay was appropriate in this circumstance. For all of the above reasons, we reject Appellant's claim that the first **Sibron** exception to mootness applies.

Next, Appellant claims that the second **Sibron** exception applies. With respect to that exception, the entirety of Appellant's argument is as follows:

> The second exception "permits adjudication of the merits of a criminal case where 'under either state or federal law further penalties or disabilities can be imposed... as a result of the judgment which... has been satisfied.' **Sibron**[], 392 U.S. [at] 54 (citing **St. Pierre v. United States**, 319 U.S. 41 (1943)). This exception has expanded to the extent that the 'mere possibility' [of collateral consequences] is enough to preserve a criminal case from ending 'ignominiously in the limbo of mootness.'" **Id.** at 55 (citing **Parker v. Ellis**, 362 U.S. 574, 577 (1960) (dissenting opinion)). Thus, even if this Court were to find that the case or controversy ended when [] Appellant was extradited to the demanding state, the fact that [] Appellant has remained incarcerated throughout the pendency of this [a]ppeal triggers the applicability of the continuing collateral consequences exception to mootness.

Appellant's Reply Brief at 7.

Appellant's discussion of this issue is simply inadequate. His summary conclusion is not supported by the cited authorities. Clearly, **Sibron** and the related authorities are discussing mootness in the context of an appeal from a criminal conviction, not an appeal from an extradition order. The collateral

consequences discussed in those authorities are collateral *to a criminal conviction*. For example, a felony conviction may continue to burden individuals long after a sentence has expired by dramatically increasing the consequences of future convictions, divesting that individual of the right to vote in some jurisdictions, prohibiting access to certain social services available to non-felons, and/or impairing future employment opportunities. If Appellant ultimately faces such collateral consequences, it will be because he is convicted in New York, not because he was extradited to New York. Indeed, because Appellant is subject to trial in New York, he may still avoid the collateral consequences of a conviction. Accordingly, the mootness of the instant appeal does not permanently end Appellant's opportunity to escape the collateral consequences of a criminal conviction which has not yet, to this Court's knowledge, even occurred. As such, we disagree that the second **Sibron** exception applies.

Finally, we are compelled to note that Appellant premises many of his arguments against a determination of mootness on the fact that he attempted to preserve the case or controversy at issue by filing his Stay Application. That application was defective in many regards, as discussed above. Additionally, this Court's denial of Appellant's Stay Application did not completely divest Appellant of a remedy in Pennsylvania's Courts. Following the issuance of our order denying his Stay Application, Appellant failed to seek reconsideration of the order denying the stay, or by appealing that

decision to our Supreme Court. By failing to exhaust all available remedies, Appellant's claims of injustice are significantly diminished on their face.

In sum, we conclude that every issue raised in Appellant's brief has been rendered moot by his extradition to New York. There is no longer any possibility of this Court's providing any form of relief to Appellant and, as such, any opinion issued by this Court would be merely advisory in nature. Moreover, Appellant has failed to prove any applicable exception to the mootness doctrine. Accordingly, we dismiss the instant appeal as moot.

Appeal *dismissed* as moot.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/26/2017