J-A22016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PR METROPLEX WEST LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MW GENERAL, INC. | |
| Appellee | No. 3139 EDA 2016 |

Appeal from the Order Entered October 4, 2016
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2016-13230

BEFORE:  BOWES, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED OCTOBER 24, 2017**

PR Metroplex West, LLC ("Metroplex"), appeals from the trial court's order, entered in the Court of Common Pleas of Montgomery County, denying its emergency motion for a preliminary injunction.[1]  After careful review, we dismiss the appeal as moot.

This action involves a dispute over the proposed sale of a large shopping center ("the Center") located in Plymouth Meeting.  Metroplex and Appellee, MW General, Inc. ("MW"), jointly own and operate the Center.[2]  The parties'

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that an interlocutory order that denies an injunction is appealable as of right.  **See** Pa.R.A.P 311(a)(4).

[2] Metroplex West Associates, L.P. a Pennsylvania limited partnership, owns, operates and maintains the Center.  Metroplex General, Inc., is the sole

business relationship and ownership of the Center is memorialized in a 1999 Partnership Agreement ("Agreement") and a 2001 Stockholders' Agreement (Stockholders' Agreement).

Section 4.4.2 of the parties' Stockholders' Agreement states:

> If either Stockholder (herein the 'Selling Stockholder') shall **receive** from a third party which is not an Affiliate, a bona fide written offer acceptable to it for the purchase of all but not less than all of the Partnership Property, and provided such offer if accepted shall provide for a deposit by a certified check of the prospective purchaser for a sum at least equal to ten (10%) percent of the purchase price, and shall provide for the closing of title not less than ninety (90) days nor more than one hundred twenty (120) days after the date of such offer, and such offer has sufficient information on which a reasonable judgment may be made as to the ability of the prospective purchaser to perform, such offer shall be delivered to the other Stockholder (herein the 'Other Stockholder') within fifteen (15) days after its receipt, together with a request by the Selling Stockholder to the Other Stockholder to authorize the Corporation to sell the Property in accordance with said offer.

Stockholders' Agreement, § 4.4.2 (emphasis added). When a party under the Stockholders' Agreement receives proper notice from the other party of a "bona fide written offer" for the Center, the other party must then make an election to authorize the Corporation, or agree within thirty days after receipt of the selling Stockholder's notice, to purchase the selling Stockholder's interest in the Partnership. *Id.* However, if the other party who receives notice of a "bona fide written offer" fails to make a timely election regarding the offer, then that party will be deemed to have elected to authorize the sale

_____

general partner of Metroplex West. Metroplex General is owned and controlled by Metroplex and MW.

of the Partnership Property pursuant to the offer and must participate in the sale. *Id.*

In January 2016, Metroplex began seeking a purchaser for the Center in an effort to divest its parent company, Pennsylvania Real Estate Investment Trust ("PREIT"), of its noncore assets. On May 27, 2016, Metroplex received a Letter of Intent ("LOI") from a third party, DDR Corporation ("DDR"), indicating its interest in purchasing the Center. The May 27, 2016 LOI stipulated that it was "open for acceptance until July 15, 2016 at 5:00 p.m. EST and will automatically expire if not accepted in writing prior to such time and date." *See* May 27, 2016 LOI, Exhibit B to Ioannou Affidavit. On May 31, 2016, Metroplex sent a letter to MW giving it notice of its intention to sell the Center to DDR pursuant to the terms and conditions set forth in DDR's LOI. In the letter, Metroplex requested that MW make its required election under section 4.4.2 of the Stockholders' Agreement and also indicated that if MW failed to deliver an election notice to Metroplex by a given response date, that it would deem MW to have authorized the sale of the Center. On June 7, 2016, MW responded to Metroplex's letter, stating that DDR's May 27 offer was not a "bona fide offer" under section 4.4.2, but merely an expression of intent and a negotiation aid for the discussion of a potential sale of the Center, and, therefore, DDR's LOI did not trigger any obligation on MW's part under the Shareholder Agreement.

On June 13, 2016, DDR revised its offer for the Center, clarifying that the terms of the LOI are binding upon the parties, that the LOI is subject to

certain rights held by MW to elect to purchase the Center, and that if MW does exercise such rights then DDR acknowledges that Metroplex will be unable to convey the Center to DDR. On June 14, 2016, Metroplex notified MW of DDR's revised LOI and its continued intention to sell the property, subject to MW's right of first refusal. On June 24, 2016, MW responded to Metroplex's letter by again contending that DDR's LOI did not constitute a "bona fide offer" but was merely a conditional offer that does not obligate DDR to purchase the Center and, accordingly, does not trigger any obligation for it to comply with section 4.4.2 of the Stockholders' Agreement.

On June 30, 2016, Metroplex filed a complaint against MW seeking specific performance/injunctive relief and declaratory relief. On that same date, Metroplex filed an emergency motion seeking a mandatory preliminary injunction.[3] In its complaint Metroplex claimed that it received a "bona fide offer" from DDR to purchase the Center and that MW had breached the parties Stockholders' Agreement by failing to comply with section 4.4.2. On August 23, 2016 and September 12-14, 2016, the trial court held a hearing on Metroplex's emergency motion for a preliminary injunction. At the hearing, Metroplex sought the court's approval to sign DDR's letter of intent and proceed with the sale. On October 3, 2016, the court denied the motion.

---

[3] Mandatory injunctions command the performance of some positive act to preserve the *status quo*, where prohibitory injunctions enjoin a party from doing an act that will change it. **Mazzie v. Commonwealth**, 432 A.2d 985 (Pa. 1981).

Metroplex filed a timely notice of appeal,[4] presenting the following issues for

our consideration:

> (1)     Whether the trial court erred by denying [Metroplex's] emergency motion for preliminary injunction on the basis that [Metroplex] failed to demonstrate a clear right to relief where [Metroplex] manifestly established that it was entitled to an injunction under section 4.4.2 of the parties' Stockholders' Agreement.
>
> (2)     Whether the trial court erred by denying [Metroplex's] emergency motion for preliminary injunction on the basis that [Metroplex] failed to demonstrate it lacked an adequate remedy at law where [Metroplex] proved that without the requested injunction it would be unable to sell the Metroplex and would lose an irreplaceable business opportunity.
>
> (3)     Whether the trial court erred by denying [Metroplex's] emergency motion for preliminary injunction on the basis that [Metroplex] failed to establish the remaining requirements for a preliminary injunction where [Metroplex] in fact proved all of the necessary requirements for issuance of its requested preliminary injunction.

Before we address the merits of the instant appeal, we must discuss

MW's claim that this appeal is rendered moot by the fact that the expiration

date of DDR's LOI has passed. [5]

Our Supreme Court explained the circumstances which invoke the

mootness doctrine as follows:

> [C]ases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten

---

[4] The trial court did not order Metroplex to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

[5] The trial court did not address the issue of mootness in its Rule 1925(a) opinion.

- 5 -

underway[,] changes in the facts or in the law[,] which allegedly deprive the litigant of the necessary stake in the outcome. The mootness doctrine requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."

*In re D.A.*, 801 A.2d 614, 616 (PA. Super. 2002), citing *In re Gross*, 382 A.2d 116, 119 (Pa. 1978). An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case. *In re Cain*, 590 A.2d 291 (Pa. 1991). "Where changes in the facts of a pending case occur that eliminate an actual controversy and make it impossible for the court to grant the requested relief, the case will be dismissed as moot." *J.S. and C.S. v. Whetzel*, 860 A.2d 1112, 1118 (Pa. Super. 2004).

There are two well-established exceptions to the mootness doctrine: (1) when the issue presented is one of great public importance or (2) is one that is capable of repetition yet escaping judicial review. *Ass'n of Pa. State College & Univ. Faculties v. Pa. Labor Rels. Bd.*, 8 A.3d 300, 305 (Pa. 2010).

Instantly, DDR's revised June 13, 2107 LOI indicated that its offer would automatically expire on July 15, 2016 at 5:00 p.m. EST if not accepted in writing prior to that date and time. At the preliminary injunction hearing, Metroplex stated that DDR extended this deadline, first through September 1, 2016, and then again until September 30, 2016. N.T. Preliminary Injunction Hearing, 8/23/16, at 144-45. As of the date of the preliminary injunction hearing, counsel for Metroplex confirmed that the expiration date had been

extended to September 30, 2016. *Id.* at 145 ("Okay. So right now, that date has been extended to September 30th? Yeah.").

Without evidence to the contrary, the record supports the fact that DDR's LOI expired on September 30, 2016. Instantly, Metroplex's proposed order for injunctive relief states the following, "IT IS HEREBY FURTHER ORDERED AND DECREED THAT pursuant to section 4.4.2 of the Stockholders' Agreement, [MW] is required forthwith to authorize Metroplex General, Inc. to sign the June 13 bona fide written offer." Metroplex's Proposed Order Granting Preliminary Injunction, at 3. Based upon this language, any order granting injunctive relief entered after September 30, 2016 would have had no force or effect on the sale of the Center to DDR where DDR's LOI had already expired. *See Burke v. Independence blue Cross*, 103 A.3d 1267, 1271 (Pa. 2014) ("The claim of mootness, by contrast, stands on the predicate that a subsequent change in circumstances has eliminated the controversy so that the court lacks the ability to issue a meaningful order, that is, an order that can have any practical effect.").

Metroplex claims that the issue presented to this Court is capable of repetition and apt to elude appellate review since it "would seek to obtain a new offer to purchase the [Center]" and the issue regarding what constitutes a "bona fide offer" under section 4.4.2 would arise again. Appellant's Reply Brief, at 8. However, the relief requested in Metroplex's motion for injunctive relief was specifically tailored to the July 13, 2016 offer extended by DDR to buy the Center. Because that offer expired on September 30, 2016, the court

could no longer order the injunctive relief Metroplex sought. Thus, we find that this interlocutory appeal is moot.[6] *See Strassburger v. Philadelphia Record Co.*, 6 A.2d 922 (Pa. 1939) (appeal was from refusal of request for preliminary injunction to prevent annual meeting of shareholders from transpiring on certain day; appeal rendered moot due to fact that annual meeting took place).

We do not classify this case as one that involves an issue of great public importance or one that is capable of repetition and apt to elude judicial review. *Cf. Burke*, *supra*, (even though issue moot, controversy was of great public importance due to prevalence of autism-spectrum-disorder diagnoses and significant amount of time that ordinarily elapses between when insurer originally denies coverage and when court rules on whether denial permissible under Act 62). Metroplex will have the opportunity to solicit more potential buyers for the Center. Moreover, we decline to speculate as to whether the parties will come to a stalemate on the interpretation of section 4.4.2 in the event of future sale of the Center.[7]

---

[6] We recognize that Metroplex's remaining claims pled in its civil action-equity complaint, specific performance and declaratory judgment, are still viable. Mootness only applies to Metroplex's emergency motion for injunctive relief which is the sole issue on appeal.

[7] Moreover, in the preliminary injunction/equity context, MW aptly points out that Metroplex could have prevented the lapse of DDR's offer by making it contingent on the final resolution of the pending motion or could have been more diligent in moving the matter along.

Appeal dismissed as moot.[8]

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2017

_____

[8] However, even if we were to find that the current appeal was not moot, we would affirm the trial court's denial of Metroplex's emergency motion for a mandatory preliminary injunction where Metroplex did not present evidence to establish that it was likely to prevail on the merits. **_See Greenmoor, Inc. v. Burchick Constr. Co._**, 908 A.2d 310 (Pa. Super. 2006). DDR's LOI is simply not a "bona fide offer" as is specifically required under section 4.4.2. The LOI lacked explicit terms delineated in the Shareholder Agreement. **_Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mt., Inc._**, 828 A.2d 995 (Pa. 2003) (on appeal from denial of preliminary injunction, appellate court only examines record to determine if there were any apparently reasonable grounds for action of trial court; ruling will be reversed only if it is plain that no grounds exist to support decree or that rule of law relied upon was palpably erroneous or misapplied). DDR's letter of intent did not equate to an "offer" under the terms of the parties' Shareholder Agreement where there was no accompanying 10% deposit; no confirmed purchase price; no settlement date; and no financial information provided. The court found that DDR's proposal was merely "an agreement to negotiate." Trial Court Opinion, 12/8/16, at 6. Because DDR's purchase price was subject to change and further negotiations, Metroplex's "clear right to relief and reasonable likelihood of success on the merits," was lacking.